## City of Raceland et al. v. Colvin et al.

(Decided June 19, 1936.)

R. H. RIGGS for appellants.

L. D. BRUCE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The city of Raceland is a city of the fifth class. It owns and operates a water system and furnishes water to the residents of the city. Under an arrangement with Freda and H. B. Colvin, it furnished them

with water on lot No. 43 "of the second addition to Chinville, now Raceland." At the time the arrangement was made to furnish their premises with water, there were on the lot a dwelling which faces Crump street; a feed barn, and a garage, 30 or 40 feet from the dwelling, with a four-room apartment and bath above. The same buildings are now on the lot. The commode used by the occupants of the dwelling is in the basement of the garage and also hot water for the dwelling. The apartment over the garage has a commode and flush toilet. The dwelling is occupied by a tenant, and the apartment over the garage by the Colvins' daughter and her family. The garage is used in connection with the dwelling, as well as the apartment. A toilet for the dwelling is in a back building. There is one water line and meter installed for the dwelling, the garage, and the apartment over the garage, with which the occupants of the dwelling and of the apartment are furnished water. The dwelling has one water "spigot" in the kitchen. In the bathroom in the apartment over the garage there are two "spigots." The water line runs from the back of the lot, through the garage, into the dwelling. The regulations of the city's waterworks system required a deposit of $5 for each building using the water. Colvin deposited the $5. He claims that he has paid the water rent for all the water used in both the dwelling and the apartment over the garage and his daughter has paid no part of it. His son-in-law testified that during the eight months he lived in the apartment he paid Colvin water rent, charging it on the grocery bill as water rent.

The city gave ten day's written notice of its intention to cut off the water from the Colvins' premises for violation of the city's ordinance and rule 10 of the public service commission, and to discontinue the water service. The notice was delivered to Colvin for his wife, who owned the lot. Colvin usually looked after and acted as agent for her in matters pertaining to the lot, dwelling, apartment over the garage, and the use of the water in connection therewith. The city cut off the water.

The Colvins brought this action for injunctive relief against the city to prevent it from withholding the water from the premises as above described, and to require it to reinstall adequate water service as had

theretofore existed, and for damages for withholding the water from their premises.

The city traversed the petition and pleaded rule 10 of the public service commission governing water systems in cities of the fifth class, and an ordinance of the city governing the use of water by the customers of the city's water system.

In part, section D of rule 10 authorized the city, when it "discovered that a customer had obtained service without such service having been registered on the meter in whole or in part, as evidenced by mechanical contrivances regarding meter registration, or any method which interferes with the proper metering of such service," immediately to discontinue the service to the customer.

Section 11 of the city's ordinance reads:

"No meter shall be used to furnish more than one building".

The circuit court decided that the Colvins "had not violated any of the rules or ordinances or parts thereof, * * * and further adjudged that subsection 11 of section 2 of Ordinance A152 of the rules and regulations of the Raceland waterworks * * * is not a reasonable rule," and declared it invalid, and decreed the Colvins the relief sought in their petition.

It is their theory that the dwelling, the garage with the toilet in the basement for the use of the dwelling, and the apartment over the garage with the bath and toilet, are one building, within the meaning of subsection 2 of City Ordinance A152. The reading of the court's order discloses that he rested his decree solely on the unreasonableness of subsection 11 of section 2 of City Ordinance A152.

The facts and the ordinance involved herein, the principles controlling the same, and by which the rights of the parties must be determined, are substantially those in Specht v. Louisville Water Co., 117 Ky. 414, 78 S. W. 142, 25 Ky. Law Rep. 1506. It decides the identical questions here involved, adversely to the Colvins.

On the authority of it, the judgment is reversed, with directions to dismiss the petition and for proceedings consistent herewith.